UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-14039-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANNIEL GOMEZ,

    Defendant.
_____/

FILED by ___ D.C.
MAR 27 2008
CLARENCE MADDOX
CLERK U S DIST CT.
S. D. OF FLA.

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO VACATE GUILTY PLEA [D.E. #345]

**THIS CAUSE** having come on to be heard for an evidentiary hearing on March 26, 2008, in respect to the Defendant Gomez' Motion to Vacate Guilty Plea [D.E. #345] and this Court having reviewed the motion, the government's response, and having received evidence and argument at the hearing, this Court recommends to the District Court as follows:

1. At the outset of the hearing, CJA counsel Mr. Chaney, who has been appointed to represent the Defendant in respect to this motion, asked that the Court receive information at sidebar. This information was made a part of the record, but counsel for the government was excluded from the conference due to the fact that this Court did not know what Mr. Chaney and the other attorneys who had previously represented the Defendant were going to put on the record.

2. At sidebar, Mr. Reynoso and Mr. Kreiss appeared with Mr. Chaney. Mr. Reynoso had previously represented the Defendant briefly in respect to a joint defense agreement. Mr. Kreiss was previous CJA counsel for the Defendant Anniel Gomez. Both Mr. Reynoso and Mr. Kreiss simply advised the Court that they had received subpoenas from

the government for this hearing and could not testify to the matters discussed by the Defendant Anniel Gomez without violating the attorney-client privilege.

3. This Court explained to counsel at the sidebar that it is the Defendant's motion and he has the burden of going forward. Further, this Court stated that it would not force either Mr. Reynoso nor Mr. Kreiss to violate the attorney-client privilege. Thereupon the sidebar was concluded.

4. Mr. Chaney then asked this Court for a brief recess to allow him to speak further with his client, Mr. Gomez. This Court did take a brief recess.

5. After returning to court, this Court placed on the record what Mr. Chaney, Mr. Reynoso and Mr. Kreiss told the Court at the sidebar since this Court did not believe that any of the information given to the Court during sidebar was confidential or privileged in any way. This Court merely informed Ms. Acosta, counsel for the government, that both Mr. Reynoso and Mr. Kreiss indicated that they had been subpoenaed and would not be able to voluntarily testify without violating the attorney-client privilege. Thereupon, this Court directed Mr. Chaney to proceed with any evidence he wished the Court to consider in respect to the Defendant's motion.

6. Mr. Chaney called the Defendant, Anniel Gomez, to testify. Mr. Gomez' testimony was as follows:

## ANNIEL GOMEZ

7. After the Defendant was duly sworn, the certified court interpreter positioned herself at the witness box to the Defendant's left and simultaneously translated the proceedings while the Defendant was testifying. This Court also notes that during the time that the Defendant was not on the witness stand, but was merely at counsel table, that he

was wearing a headset and that the certified court interpreter was interpreting for the Defendant at those times as well.

8. The Defendant testified that he admits responsibility for the marijuana offenses and wanted to plead guilty to those. However, he did not want to be held responsible for the murder of his uncle. It is clear that the Defendant is not charged in this case nor in any other state or federal case with his uncle's murder at this time. However, the Pre-Sentence Investigation, which has been prepared in anticipation of the Defendant's sentencing, yet to be held by the District Court, contains information which assesses "points" for responsible conduct relating to the Defendant's involvement with his uncle's murder. It is apparent that the Defendant does not deny responsibility for the underlying marijuana offenses, Counts One and Two which he pled guilty to in this case, but is having a problem in bearing any responsibility whatsoever at sentencing for any conduct relating to his uncle's murder. This Court will go into that in greater detail later herein.

9. The Defendant testified that he had agreed to plead guilty to the marijuana offenses and that the Court could sentence him to "years" for that, but he should not be sentenced for anything relating to his uncle's murder.

10. Mr. Chaney explained to the Defendant that the Defendant retains the right to object to the assessment of "points" in the PSI relating to the Defendant's uncle's murder and the Defendant acknowledged that he understood that.

11. The Defendant testified that his previous CJA attorney, Mr. Kreiss, never explained to him that in pleading guilty to the marijuana offenses that he could be held responsible for the murder under relevant conduct as determined by the appropriate advisory Sentencing Guidelines. Further, the Defendant testified that Mr. Kreiss never explained to him that he could object to the "points" associated with the murder. The Defendant stated

on several occasions while testifying that he has no problem being sentenced in respect to the marijuana conduct, but wishes to "fight the murder."

12. The Defendant testified that he would not have pled guilty if he knew that the PSI could hold him responsible for associated conduct relevant to his uncle's murder.

13. On cross-examination, Ms. Acosta for the government offered into evidence Exhibit 2 which was the Defendant's Plea Agreement. Exhibit 2 was admitted into evidence without objection from Mr. Chaney. The Defendant identified his signature on that Plea Agreement. Further, Ms. Acosta read into the record the two related marijuana charges contained in Counts One and Two of the Superseding Information to which the Defendant pled guilty. The Defendant testified that his attorney, Mr. Kreiss, told him to plead guilty and that Mr. Kreiss told him that he had talked with the government and the judge already and everything was set for him to plead guilty.

14. The Defendant admitted to being in court at the change of plea. He admitted signing the Plea Agreement, but says that he did not understand it. However, the Defendant admitted on cross-examination that the Plea Agreement was read to him through the use of the court certified interpreter prior to him signing it and prior to his change of plea hearing. Further, the Defendant admitted that the certified court interpreter read this Plea Agreement to him and he discussed it with his attorney prior to his change of plea hearing. Additionally, the Defendant admitted that the certified court interpreter was present and interpreted all proceedings during his change of plea hearing which was held on September 12, 2007 before the undersigned United States Magistrate Judge. The Defendant testified that Mr. Kreiss explained to him the terms of the Plea Agreement to him as well as the consequences of the plea.

15. Government's Exhibit 1 is the transcript of the change of plea hearing held before this Court on September 12, 2007. It was admitted into evidence at this hearing without objection by Mr. Chaney.

16. The Defendant testified that he admits he was involved with the marijuana cultivation and conspiracy. Ms. Acosta read portions of the proffer from the transcript of the change of plea hearing. Beginning on the bottom of page 13, Ms. Acosta read into the record the portion of the proffer given by Ms. Sreenan, counsel for the government at the time of the change of plea hearing. Ms. Acosta then continued with reading page 14 of the transcript which included the portion of the proffer which described in detail how the Defendant went to another grow house at 2631 S.W. Feather Terrace in Port St. Lucie, Florida, which was being maintained by his uncle, Jesus Miranda. Ms. Acosta continued to read from the transcript containing the proffer which went on in detail to describe the altercation between this Defendant and his uncle, Jesus Miranda, which escalated to the point that the Defendant "armed himself with a knife from Miranda's kitchen and stabbed Miranda." Further, Ms. Acosta read from the transcript that "Miranda and the Defendant continued to fight until Miranda expired due to multiple stab wounds."

17. Immediately after this portion of the proffer contained on the bottom of page 14 of Government's Exhibit 1, the following was read by Ms. Acosta as part of the proffer into the record:

> "The parties agree that there may be guidelines consequences for the death of Miranda. However, the parties reserve all rights to argue the application of the guidelines at sentencing."

18. During cross-examination at this hearing, the Defendant admitted that at his change of plea hearing his attorney, Mr. Kreiss, agreed to that factual basis as stated by the government and that the Defendant, after being asked by this Court, also agreed to that

factual basis. Further, the Defendant testified that at the time of his change of plea hearing, he understood there may be consequences associated with the murder, but denied that Mr. Kreiss explained the "ramifications" on his sentencing.

19.   On re-direct examination, the Defendant testified that he did not realize he was accepting any responsibility for his uncle's murder by accepting the factual basis in the proffer at his change of plea hearing.

20.   There was no other evidence offered by the Defendant nor any evidence offered by the government. However, counsel for the government, Ms. Acosta, stated that she believed that the questions raised by the Defendant and the testimony given by the Defendant at this hearing constituted a waiver of his attorney-client privilege. Further, Ms. Acosta stated that if this Court felt that the Defendant had met his burden in respect to this motion, that she wished to call Mr. Kreiss, who was present in court, to answer questions concerning his discussions with the Defendant Gomez.

21.   Having no other evidence to be presented to this Court, Mr. Chaney argued that the Defendant did not understand that by pleading to the marijuana charges he could be held responsible for the murder of his uncle. Mr. Chaney stated that the language barrier may have caused this misunderstanding. Mr. Chaney argued that the Defendant should be allowed to withdraw his plea, go to trial and challenge any responsibility for conduct associated with the murder of Jesus Miranda.

22.   Ms. Acosta argued that the Defendant is not charged anywhere, whether it be in federal court or state court, with the murder of Jesus Miranda. Further, Ms. Acosta argued that even if the Defendant was permitted to withdraw his plea, went to trial and was convicted, that the Court would be back in the same situation as it presently is, i.e., conduct associated with the murder would be included within the Pre-Sentence Investigation as relevant conduct the Court could consider at sentencing.

23. Mr. Chaney argued in rebuttal that the Defendant did not understand at his change of plea hearing that he was accepting any responsibility for the murder.

## ANALYSIS

24. This Court first advised the parties at the conclusion of the hearing that the transcript bears out the normal procedure that this Court follows in all cases involving a guilty plea. The certified court interpreter translated all proceedings at the change of plea hearing. After the Defendant Gomez was placed under oath, this Court asked the Defendant if he understood that he was in court to plead guilty and the Defendant responded yes.

25. The following are relevant portions of the change of plea hearing as taken from the transcript entered into evidence in this case:

    A. The transcript accurately reflects that this Court told the Defendant that it was going to be asking him many questions and that if at any time he needed to stop and ask the Court to explain any question further because he did not understand something, that he could do so and the Court would explain the question again. When asked if the Defendant understood, the Defendant stated yes.

    B. Next, the Court advised the Defendant that if at any time he needed to stop and ask his attorney, Mr. Kreiss, any questions that he should let the Court know and the Court would give him as much time as he needed. The Defendant stated that he understood this.

    C. Finally, since this Court was using a certified court interpreter for the change of plea hearing, this Court advised the Defendant that if at any time the Defendant needed something read again or interpreted, that he should let the Court know and that the

Court would ask the interpreter to repeat. The Defendant acknowledged and said that he understood.

D. The Court then went through the Waiver of Indictment in this case and asked the Defendant if he understood that by executing the Waiver of Indictment that he was allowing the government to proceed by way of Superseding Information against him. The Defendant acknowledged that he understood that and agreed to it.

E. This Court next went through the standard plea colloquy and made certain that the Defendant understood that this Court was conducting the change of plea hearing pursuant to an order of reference from the District Court as well as pursuant to a request of his attorney, the government attorney and the Defendant. The Defendant acknowledged this and agreed that this Court could accept his guilty plea and conduct the change of plea hearing. Further, it is clear in the transcript that the Defendant understood that this Court was only taking his change of plea and that the District Court Judge assigned to his case would make all decisions concerning the sentence to be imposed in his case and would preside over the sentencing hearing in his case.

F. This Court asked the Defendant during the plea colloquy the extent of his education. He said he was 32 years old and had gone to about the 7th grade. The Court confirmed that the Defendant had either directly with his attorney or through the use of an interpreter discussed all of the documents and all of the issues in his case. The Defendant responded that he had had that opportunity and did discuss everything with his attorney.

G. The Defendant stated that he took medication for epilepsy, but those pills did not prevent him from understanding what was going on or being able to discuss his case with his attorney.

H. This Court asked the Defendant if he had received a copy of the Information filed in this case and had he fully discussed those charges and the case in

general with his attorney. The Defendant said that he had done so. This Court asked if the Defendant was fully satisfied with the counsel representation and advice given him in this case give by his attorney and the Defendant responded yes.

I. This Court next went over the written Plea Agreement in this case. This Court asked the Defendant if he had an opportunity to read the Plea Agreement or have it read to him through the use of an interpreter and discuss it with his attorney before he signed it. The Defendant said he had done so. Further, this Court showed the Defendant his signature on the last page of the Plea Agreement and the Defendant acknowledged that it was his signature.

J. This Court advised the Defendant that it would be going over certain portions of the Plea Agreement, but not every word. This Court then read from paragraph 1 of the Plea Agreement specifically the criminal conduct set forth in Counts One and Two of the Superseding Information to which the Defendant was pleading guilty. This Court asked the Defendant if he understood that those were the charges he was pleading guilty to and the Defendant responded yes. This Court also read from the Plea Agreement that the government agreed to seek dismissal of the Superseding Indictment as to the Defendant after sentencing and the Defendant said that he understood that.

K. This Court then moved on to paragraph 4 of the Plea Agreement which set forth the possible penalties that the Defendant was facing. This Court read word-for-word from that provision of the Plea Agreement and asked the Defendant at the conclusion if that was his understanding of the penalties he was facing. The Defendant stated yes, he understood those to be the penalties.

L. This Court then asked the Defendant if the Plea Agreement represented in its entirety all understanding that he had with the government and the Defendant stated

9

yes. When asked if the Defendant understood the terms of the Plea Agreement, the Defendant stated that he did.

M.   This Court specifically asked the Defendant if anyone had made any other or different promises or assurances of any kind to him in an effort to make him plead guilty and the Defendant said no. Also, this Court asked if anyone had attempted in any way to force him to plead guilty and the Defendant said no.

N.   This Court advised the Defendant that the District Court assigned to his case could reject any recommendations set forth in the Plea Agreement without permitting him to withdraw his plea of guilty and could impose a sentence that is more severe than he may anticipate. The Defendant stated that he understood that.

O.   It was then at this point in the change of plea hearing that the Defendant needed to be arraigned on the Superseding Information which had just been filed in court during this plea hearing. Once again, the same charges which were set forth in the Plea Agreement were read by the government with the associated possible penalties for each. At the conclusion of the government's presentation, this Court asked the Defendant again if he understood the charges and the penalties he was facing under the Superseding Information and the Defendant stated yes. The Defendant then entered a not guilty plea just for the record and this Court proceeded with the continuation of the change of plea hearing. It is noted that Mr. Kreiss, as counsel for the Defendant, stated on the record at that time that he had an opportunity to review the Superseding Information with Mr. Gomez before court.

P.   It was next, at this point in the change of plea hearing, that Ms. Sreenan as counsel for the government stated the factual basis for the plea. This begins in the middle of page 12 of the transcript of the change of plea hearing and continues to the top of page 15. The Court will not re-state the factual basis set forth in the transcript except to state that

it specifically set forth the necessary elements for both Counts One and Two to which the Defendant was pleading guilty.

  Q. As stated earlier herein, beginning on the bottom of page 13, the proffer by Ms. Sreenan discusses the Defendant's conduct relating to the stabbing and resultant death of Jesus Miranda, the Defendant's uncle. The proffer goes into great detail in discussing what the Defendant's conduct was and that it directly resulted in Jesus Miranda's death. As stated previously, the transcript also accurately reflects that Ms. Sreenan stated that "the parties agree that there may be guidelines consequences for the death of Miranda. However, the parties reserve all rights to argue the application of the guidelines at sentencing."

  R. The Court then asked Mr. Kreiss if he agreed to the factual basis as stated by the government. Mr. Kreiss stated that they agreed, but specifically as to the amount of the plants, that the Defendant was only stipulating that there were over 100 plants. Apparently there was a question of whether or not some of the plants as stated in the government's proffer were mature plants or plants with root systems. However, it was merely necessary that the Defendant admit that there were over 100 plants, which Mr. Kreiss did.

  S. This Court then asked the Defendant "Okay. All right. With that caveat, Mr. Gomez, with that statement by your attorney, do you accept the factual basis as stated by the government?" The Defendant responded "Yes."

  T. This Court then confirmed on the record that the Defendant is a Cuban National and that there are consequences associated with his plea and conviction in this case which could result in his deportation to country of origin. The Defendant acknowledged that he understood that there such consequences.

11

U.    When asked if the Defendant understood the possible consequences of his plea, the Defendant stated that he did understand.

V.    This Court further advised the Defendant that pursuant to the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued advisory guidelines for judges to follow in determining the sentence in a criminal case. This Court asked the Defendant if he understand that these advisory sentencing guidelines are not mandatory and that the sentencing judge in his case was not obligated to follow them in his case. The Defendant stated that he understood that.

W.    This Court then asked the Defendant if he and his attorney had talked about how the sentencing guidelines might apply to his case and the Defendant stated that he had discussed them with his attorney.

X.    This Court next advised the Defendant that a Pre-Sentence Report would be prepared by the Probation Office to assist the District Judge in sentencing and that he and the government would have the right to review the completed report and challenge any of the reported facts and applications of the advisory guidelines recommended by the U. S. Probation Office and that the sentence imposed in his case may be different from any estimate that his attorney may have given him. The Defendant stated yes he understood those conditions.

Y.    The Court next advised the Defendant that after his advisory guideline range had been determined, the District Court could depart from those guidelines and impose a sentence that is either more severe or less severe than the sentence called for by the guidelines. The Defendant stated that he understood.

Z.    This Court next advised the Defendant that the District Court could depart from the guidelines and sentence him up to the statutory maximum permitted by law in his case. The Defendant stated that he understood. The Court then went on to explain

the Defendant's right to a trial and those rights associated with a trial. They are more specifically set forth in detail in the transcript of the change of plea hearing and this Court will not re-state them here. However, this Court did ask the Defendant if he understood that by entering a plea of guilty, if those pleas were accepted by the Court there would be no trial and he would have waived or given up his rights to a trial as well as those rights associated with a trial as the Court had described them to him on the record. The Defendant stated that he understood.

AA. The Court then asked separately as to each Count how the Defendant pled. As to Count One the Defendant pled guilty and as to Count Two the Defendant stated that he pled guilty.

BB. This Court then advised the Defendant that a Pre-Sentence Report would be prepared by the Probation Office, that he would be asked to give information for that report and his attorney could be present at that time. He stated he understood that right. Further, this Court advised that the Court would permit he and his attorney to read the Pre-Sentence Report and then file any objections to that report prior to his sentencing hearing. The Defendant stated that he understood that right. Finally, this Court advised the Defendant that he and his attorney would have the right to speak at his sentencing hearing if he wished to do so and the Defendant acknowledged that right as well. This Court then read into the record the sentencing date which had been set by Judge Moore in this case. This Court notes that the sentencing has been reset by Judge Moore.

26. As stated by this Court on the record, the Defendant bears the burden of proof as to a request to withdraw a plea of guilty. United States v. Izquierdo, 448 F.3d 1269 (11th Cir. 2006). In determining whether a guilty plea is knowing and voluntary, the Court must establish:

(1) The guilty plea is free from coercion;

  (2) The defendant understands the nature of the charges; and

  (3) The defendant knows and understands the consequences of the guilty plea.

United States v. Frye, 402 F.3d 1123 (11th Cir. 2005).

  27. As stated by this Court on the record at the conclusion of the hearing, this Court finds that the Defendant has not presented any evidence that he was coerced into entering his guilty plea in this case. Secondly, it is clear from the record, and even the Defendant's own testimony, that he understood the nature of the charges to which he was pleading guilty. Thirdly, the evidence presented is clear that the Defendant knew and understood the consequences of the guilty pleas he was entering. The charges were explained in detail in his written Plea Agreement together with the associated penalties he was facing and the same charges and associated penalties were read into the record at the change of plea hearing. The Defendant acknowledged at the change of plea hearing that he understood the charges to which he was pleading guilty and the associated penalties he was facing.

  28. The Defendant does not have an absolute right to withdraw a guilty plea. He may do so only if he can show a fair and just reason for requesting such a withdrawal. United States v. Beltran, 2008 WL 375925 (11th Cir. 2008). In considering such evidence, this Court should consider the following factors:

  (1) Whether close assistance of counsel was available;

  (2) Whether the plea was knowing and voluntary;

  (3) Whether judicial resources would be conserved; and

  (4) Whether the government would be prejudiced if the defendant were allowed to withdraw his plea.

29.     It is clear that the Defendant had close assistance of counsel, Mr. Kreiss, in this case.  Next, the Defendant's plea was knowing and voluntary.  The transcript of the change of plea hearing conducted before the undersigned United States Magistrate Judge bears this out specifically.  Next, judicial resources would be saved in that the Defendant's case would not have to be reset on the trial calendar.  The final factor, being whether or not the government would be prejudiced, is not an issue.  There has been no evidence presented to this Court whether the government would or would not be prejudiced by the Defendant being permitted to withdraw his plea of guilty.  Nevertheless, this Court finds that the suggested factors considered by this Court weigh in favor of not permitting the Defendant to withdraw his plea of guilty.

30.     This entire matter appears to boil down to the fact that the Defendant claims to have not known that the conduct relating to his uncle's murder, stated clearly in the government's proffer at the time of his change of plea, would be given "points" as relevant conduct which the District Court can consider at his sentencing.  As stated by this Court on the record, if this was sufficient reason to justify a defendant to withdraw his plea of guilty, then at any time that a defendant disagreed with any "points", relevant conduct, acceptance of responsibility, or other recommendations made by the U. S. Probation Office in a Pre-Sentence Investigation, the defendant would be permitted to withdraw his plea of guilty.  This is not the legal standard and is not the law governing the Defendant's right to withdraw his plea of guilty.

31.     This Court's plea colloquy went into detail as to questioning the Defendant concerning the written Plea Agreement as well as all of the required Rule 11 issues which must be established by the Court before it is determined whether or not the Defendant's pleas are being freely and voluntarily made.  The mere fact that the Defendant now alleges that Mr. Kreiss did not discuss these matters with him concerning the associated relevant

15

conduct set forth in the government's proffer relating to his uncle's murder is not convincing to this Court. The Defendant has a vested interest in recalling facts and situations in a certain way. His vested interest in this case is obvious in that he will be the one receiving "points" and possible additional time in prison for his conduct associated with that murder.

32.    If the Defendant did not understand these facts, this Court believes that he would clearly have raised this as an issue during his change of plea hearing. As this Court pointed out on the record, during his testimony at this hearing on his Motion To Vacate, the Defendant had no difficulty in asking his attorney to repeat a question or explain something he did not understand. This Court has pointed out herein that it advised the Defendant of that at the outset of his change of plea hearing. Now to complain that there may be a "language barrier" is ridiculous. The Defendant was provided the services of a certified court interpreter to review the charges against him, the written Plea Agreement, and to interpret all matters both before and during the change of plea hearing, as is specifically addressed in the transcript of the change of plea hearing.

33.    Even if the Defendant "misunderstood" or had a "mistaken belief" that the relevant conduct concerning his uncle's murder would not be considered at sentencing, this is an insufficient basis for permitting him to withdraw his plea of guilty. See United States v. Curbelo, 2007 WL 4415216 (11th Cir. 2007). In Curbelo, the defendant said that he had a mistaken belief that he would get a safety valve sentencing and a six month boot camp sentencing for his drug trafficking conviction. His plea agreement advised him that the receipt of the safety valve sentencing was contingent on his eligibility and that any such sentencing recommendation was not binding on the District Court, just as the Plea Agreement states in this case. Further, in Curbelo, the defendant was advised by the court that any estimated sentence given him by his attorney was not binding on the District Court, just as was done by the Court in this case. In Curbelo, the court, during the change of plea

16

hearing, gave the defendant the opportunity to express any confusion or to ask any questions about the charge, as was done by the Court in this case at the Defendant's change of plea hearing.

34. Finally, the Eleventh Circuit Court of Appeals in Curbelo, held that the District Court's failure to advise the defendant of the consequences of his guilty plea to the drug trafficking charge, namely the applicable mandatory minimum sentence, did not render his guilty plea invalid as the plea agreement advised him that his charge carried a ten year mandatory minimum term of imprisonment.

35. The Defendant in this case was clearly advised of the charges and the possible penalties he was facing. He was questioned in accordance with the recommended plea colloquy concerning the advisory sentencing guidelines and his responses to those are set forth in the transcript, Government's Exhibit1. It is not required that this Court go through each and every possible consequence or issue that may be raised in a Pre-Sentence Investigation and this is why the Defendant is advised at the conclusion of the change of plea hearing that he has a right to read and file any objections to that Pre-Sentence Investigation prior to his sentencing hearing. This was done in this case and the Defendant acknowledged he understood his rights. This Court also notes that Mr. Chaney argued that Mr. Kreiss, prior to being relieved of representing the Defendant in this case since he may have been called as a witness at this hearing, had filed objections to the Pre-Sentence Investigation specifically relating to the murder issue.

36. This Court finds that based upon the evidence presented, the Defendant has not met his burden in establishing that he is entitled to withdraw his plea of guilty. Based upon the facts presented in this case together with the exhibits, evidence and arguments of counsel, the Defendant's motion should be denied.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Vacate Guilty Plea [D.E. #345] be **DENIED** and that the matter proceed to sentencing.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this 27th day of March, 2008, at Ft. Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc:
Hon. K. Michael Moore
AUSA Diana Acosta
Wilbur Chaney, Esq.